**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LI ZHANG, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNIVERSITY OF TEXAS AT DALLAS, | § | |
| | § | |
| *Defendant.* | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

NOW COMES Li Zhang, Plaintiff in the above-styled and numbered cause, and files her Original Complaint against Defendant University of Texas at Dallas. Plaintiff would respectfully show the Court the following:

## I. THE PARTIES

1.1     Plaintiff Li Zhang ("Plaintiff") is an individual residing in Collin County, Texas.

1.2     Defendant University of Texas at Dallas ("Defendant" or "UTD") is an arm or instrumentality of the State of Texas and is a public university organized under the laws of the State of Texas and may be served by serving Richard C. Benson in his capacity as President of the University of Texas at Dallas, Office of the President, 800 West Campbell Road, Richardson, Texas 75080.

## II. JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiff's causes of action is created by federal law, specifically Title VII of the Civil

---

Rights Act of 1964 § 2000e *et seq*.

2.2     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiff's claims accrued in Dallas County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

*Plaintiff's Background*

3.1     Plaintiff has spent more than thirty-five years conducting scientific research, teaching, and serving as an administrator at top research universities. Specifically, Plaintiff's laboratory has studied heme signaling function and oxygen signaling for the past twenty-nine years. Plaintiff has made important contributions to the understanding of heme function and signaling in gene regulation, neuronal differentiation and survival, and lung cancer bioenergetics. Furthermore, Plaintiff has published a series of noted articles in the field of heme function and oxygen regulation.

3.2     Plaintiff's employment with UTD began in 2007. She served and continues to serve as professor and the Cecil H. and Ida Green Distinguished Chair of UTD's School of Natural Sciences and Mathematics. Additionally, upon the start of her employment with UTD, Plaintiff served as the Department Head of Molecular Cell Biology at UTD from 2007 to 2011. During her time as the Department Head, Plaintiff was able to increase enrollment significantly. Upon Plaintiff stepping down from her position, the Department was in stellar condition.

3.3     After Plaintiff stepped down from her position as the Department Head, she began to focus her efforts on research in cancer biology and therapeutics, as well as Alzheimer's disease. Plaintiff's research efforts have been fruitful as Plaintiff has a patent on a novel class of cancer therapeutic agents, which was approved in 2022 and has been licensed for commercial development.

3.4    Plaintiff takes her role as a professor as seriously as her role as a scientist. Her goal has been to train her students to be good scientists, and even better human beings, with the social conscience and moral character to pursue scientific truth. Her efforts on behalf of students have been practical as well, helping students get into medical schools and to obtain jobs.

3.5    Despite Plaintiff's success as a Department Head, researcher, and tenured professor, UTD—through its employees—has discriminated and retaliated against her. Defendant—through its employees—has interfered with Plaintiff's research efforts, Plaintiff's teaching responsibilities, and Plaintiff's ability to publish reputable research.

*Plaintiff's defense of Dr. Qiongxia Song, and complaint against Bruce Novak*

3.6    In spring 2016, Dr. Qiongxia Song ("Song"), a Chinese female faculty member in UTD's School of Natural Sciences and Mathematics, was denied tenure by the school's dean, Dr. Bruce Novak ("Novak"). Plaintiff had vigorously defended Song's qualifications and spoke in favor of her tenure. At the time, Plaintiff served on the Committee on Qualifications of Academic Personnel ("CQ"). UTD's Provost Dr. Inga Musselman ("Musselman") was then the administrative organizer for CQ as the associate provost. Novak strongly rejected Song's tenure, nitpicking her publication record. This decision was backed by Musselman.

3.7    Plaintiff had previously brought to Novak's attention the disparity in pay between herself and a male professor, Dr. Michael Zhang. In March 2017, Plaintiff filed a complaint against Novak, alleging discrimination against both her and Professor Song "as female faculty members of Chinese nationality."

*Inga Musselman removes Plaintiff from the Committee on Qualifications of Academic Personnel.*

3.8    Dr. Jay Kim was a junior faculty member who provided the mouse model and trained Plaintiff's students to work with the mouse model. When Jay Kim came to Plaintiff seeking

advice, because he was approaching his mid-probationary review, she suggested to him that he should be more selective on his grant proposal submissions. She based this advice on comments in the CQ discussion. Subsequently, in another CQ meeting following the meeting discussing Song's tenure, Musselman strongly emphasized that CQ members should not tell probationary faculty, or candidates for tenure or promotion, about discussions in the committee. Musselman said that she would not mention names.

3.9     Plaintiff nevertheless believed Musselman was referring to her, and responded by suggesting in the same meeting that the provost's office should make sure that candidates received feedback from their ad hoc committee chairs, because the heads may not be knowledgeable enough to provide guidance. Note that department heads are often appointed based on willingness and the personal preferences of upper administration, not on the heads' accomplishments. As the mid-probationary review's main purpose is to provide candidates meaningful advice for attaining tenure, it is important that the candidates receive useful information. Plaintiff said this to defend her comments to Jay Kim against Musselman's implied criticism.

3.10    No one said anything to oppose Plaintiff's comments, and this did not come up again. However, Musselman was clearly unhappy with Plaintiff, and she removed Plaintiff from the committee, using the excuse that Plaintiff's term was up. However, other committee members often remain on the committee for many years, and Plaintiff only served from 2014 to 2016. In further retaliation, Musselman took action against Plaintiff's research collaborator, Jay Kim.

***UTD denies Jay Kim tenure.***

3.11    On October 30, 2018, Plaintiff submitted a strong letter to support Jay Kim's tenure. However, Musselman and Dr. Kelli Palmer ("Palmer"), a UTD professor who is now the head of the department of biological sciences, weaponized graduate students to deny Jay Kim's tenure,

with the intent to damage Plaintiff's research effort, as well as to benefit Palmer. Palmer benefited because she was able to use Jay Kim's lab space to house a junior faculty member who was recruited to help Dr. Palmer run her lab and support her research. All of Jay Kim's Ph.D. students left his lab suddenly, as has now happened to Plaintiff. Musselman personally decided to deny Jay Kim's tenure against the unanimous recommendation of the Ad Hoc committee, the department, and CQ, without following the defined UTD procedures by not giving Jay Kim a chance to defend himself against the accusations.

### *Plaintiff's lab encountered issues near the end of 2021 and beginning of 2022.*

3.12    In late 2021 and early 2022, suddenly all kinds of problems happened with the purification of the anticancer protein in Plaintiff's lab. The procedure for the purification of the anticancer protein is well established, and previously any new student, with little training could start by following another student and would soon be making it work. Since that time, Plaintiff has spent a great deal of effort to advise and help students improve. However, whenever the procedure and result seemed to improve, the students managed to get it not to work again.

3.13    Simultaneously, students were also wasting expensive research materials with no solid data. This whole thing started in late 2021/early 2022. Without Plaintiff's knowledge, the students were being advised by the recent department leadership of Palmer, Dr. Duane Winkler ("Winkler"), currently the associate head of the biological sciences department, and Dr. Tae Hoon Kim ("T Kim"), a previous head of the department.

### *Plaintiff defends Dr. Jyoti Misra.*

3.14    In an above-rank faculty meeting to discuss Dr. Jyoti Misra's ("Misra") performance in November 2022, Plaintiff strongly defended Misra, a male faculty member from India who had suffered greatly by unethical, abusive treatment at the hands of Winkler and T Kim,

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                      **PAGE 5**

supported by Palmer and Musselman. Winkler imposed himself as Misra's mentor and forced Misra to develop research projects for him and took research materials from Misra's lab. Then Musselman, with the support of Palmer, T Kim, and Winkler, used graduate students as a weapon to terminate his employment. Specifically, Misra was very gentle with graduate students and was never accused of abusing them. However, T Kim came to Misra's lab and loudly berated Misra in front of Misra's graduate student. The graduate student was intimidated, and Kim blamed Misra.

3.15   Plaintiff defended Misra when he came up for mid-probationary review, and even though the committee recommended Misra's retention, he was terminated. Plaintiff's defense of Misra invited the intensification of retaliation by Palmer, Winkler, and Musselman.

***August 30, 2023, Six PhD students leave Plaintiff's lab unexpectedly.***

3.16   In the summer of 2023, Plaintiff was training nine Ph.D. students, and three other graduate students, all of whom were working in Plaintiff's lab. This number was not uncommon. As well as benefiting Plaintiff's research, and that of the graduate students themselves, the presence of so many experienced lab workers contributed to the success of Plaintiff's very popular undergraduate research course, BIOL4330.

3.17   In July and August 2023, Plaintiff received signed commitments from all of the graduate students then working in her lab, agreeing to her lab's guidelines and procedures for the upcoming year, in order to graduate with a PhD degree in a timely fashion. The students continuously demonstrated and expressed their interest and commitment to the research in her lab. On August 18, 2023, Plaintiff personally demonstrated and streaked bacteria for every student. Every student eagerly got a plate to use for their research.

3.18   Then on August 30, 2023, six of the graduate students, all Ph.D. candidates, inexplicably quit Plaintiff's lab. On information and belief, motivated to retaliate against Plaintiff

by damaging her research, teaching, and career, Winkler and Palmer coerced another Ph.D. student to leave Plaintiff's lab and join Winkler's lab, as well as masters students and rotation students, who then left her lab. Having emptied her lab of graduate students, the department used the lack of graduate assistants as an excuse to take away Plaintiff's very successful and popular research course BIOL4330 for undergraduate students. Such course was frequently a stepping stone for UTD undergraduate students to secure places in medical schools or graduate research programs.

3.19    Worse, the students had not only left, but they had also wasted research time and materials on a scale that led to the loss of a major cancer research grant on which Plaintiff was the primary investigator. In sum, with the orchestration of Musselman, Palmer, and Winkler, the students sabotaged Plaintiff's research, led Plaintiff to believe that she had a fully staffed lab going into 2023, and then coordinated an *en masse* resignation on August 30, followed by more students' leaving thereafter. This retaliation was aimed at the destruction of Plaintiff's research and teaching capability.

***Palmer and Winkler make attempts to coerce Plaintiff's remaining PhD students.***

3.20    Palmer and Winkler next retaliated against Plaintiff by communicating with her remaining Ph.D. student Adnin Ashrafi, who is very capable. They coerced her to pressure Plaintiff and to report to them about her thinking and situation. Consequently, Adnin was afraid, anxious and confused. She did little work in fall 2023. She graduated successfully in December 2023 only because of Plaintiff's understanding and constant help. Palmer and Winkler even tried to induce Adnin Ashrafi to take a teaching job under them after graduation, in order to further utilize her against Plaintiff.

3.21    Due to Palmer and Winkler's influence, Adnin Ashrafi has not provided Plaintiff with necessary details for the data that she and other departed students generated. This has

prevented Plaintiff from publishing the manuscript she has written. The data, which became part of Adnin Ashrafi's dissertation, will be wasted; without the details which the students took, to substantiate the validity of the data, Plaintiff cannot publish her manuscript. Additionally, this delays indefinitely the application for a new patent involving Plaintiff's anticancer drug and radiotherapy, which has tremendous commercial application potential.

***Retaliation and Discrimination against Plaintiff continues.***

3.22    Plaintiff's teaching load as a research professor continues to be a target of retaliation and discrimination against her. As set forth above, the undergraduate class Plaintiff taught was taken away in fall 2023. She must still teach two courses each academic year. Although she proposed teaching two courses in Fall 2024, one graduate and one undergraduate, so as to concentrate on research in spring 2025, this proposal was rejected. She then sought to have one concurrent course for both undergraduate and graduate students, which she would teach once in the fall and once in the spring. That process was dragged out, nearly derailing Plaintiff's effort to list her course as a graduate course in time, which would have forced her to teach two courses each semester.

3.23    Further, Plaintiff is under pressure to permit research done in her lab to be used in the dissertation of a student who left her lab, who had only an auxiliary role in the project in which the research data was generated. Only Adnin Ashrafi had permission to use the data in her dissertation. This other student left Plaintiff's lab, and the dissertation proposal she had worked on with Plaintiff, to work under Winkler on a project unrelated to Plaintiff's lab. Nevertheless, instead of such project forming the basis for the student's dissertation, Winkler and the student now want the benefit of the research done by other students, in Plaintiff's lab. Plaintiff is essentially being asked to condone and assist plagiarism.

3.24    Finally, discrimination against Plaintiff based on gender continues as Dr. Michael Zhang, the same colleague whose disproportionate pay Plaintiff brought to then-Dean Novak's attention in 2016-2017, receives more favorable treatment than Plaintiff.  Palmer wanted to assign Plaintiff two courses to teach while Dr. Michael Zhang teaches only half a course. Palmer told Plaintiff that she cannot have a teaching assistant ("TA") for a course with fewer than 50 students. However, Dr. Michael Zhang has been assigned a senior student as TA in a course with only 13 students.

***Plaintiff exhausted her administrative remedies with the EEOC***

3.25    On September 14, 2023, Plaintiff signed and submitted an EEOC charge against UTD for discrimination on the basis of race, color, national origin, and sex, and for retaliation against Plaintiff for bringing complaints of discrimination based on race, sex, and national origin as well as supporting other faculty being discriminated against on the basis of race, sex, or national origin, specifically Song, a Chinese female, and Misra, an Indian male, neither of whom received tenure. She alleged that such retaliation had taken the form of students—encouraged by other faculty within the biology department—wasting her research funds and lab materials for many months, and then abandoning her lab unexpectedly and joining the labs of white and/or non-Asian professors. This would deny her future grant funding and potentially interfere with her teaching abilities. A true and correct copy of such Charge of Discrimination, file-stamped September 19, 2023, is attached hereto as Exhibit A.

3.26    On April 17, 2024, Plaintiff received a letter from the Department of Justice notifying her of her right to sue within ninety days. A true and accurate copy of such Notice of Right to Sue is attached hereto as Exhibit B. Plaintiff timely brings this lawsuit within ninety days of her receipt of the notice letter.

### IV.  CAUSES OF ACTION

4.1    *Alternative Pleadings*.  To the extent necessary, each of the claims set forth below is pled in the alternative. Further, to the extent necessary, all allegations set forth above in the Factual Background section of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

**Count 1:    Employer Discrimination under 42 U.S.C. § 2000e-2(a)(1)**

4.2    Title VII prohibits discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. §2000e-2(a)(1).  As set forth above, Defendant, through its employees, has discriminated against Plaintiff based on her race (Asian), her sex (female), and on her national origin (Chinese). Specifically, Title VII prohibits discrimination based on those characteristics "with respect to [an employee's] compensation, terms, conditions, or privileges of employment."

4.3    Incorporating all of the allegations set forth in Section III of this Complaint, Defendant has, through its employees, discriminated against Plaintiff in her compensation, and in the terms, conditions, and privileges of her employment. This has caused damage to Plaintiff for which she now sues.

**Count 2:    Employer Retaliation under 42 U.S.C. § 2000e-3(a).**

4.4    Title VII also prohibits harassment and retaliation by an employer against an employee who opposes an employment practice that violates Title VII. *See* 42 U.S.C. § 2000e-3(a). As set forth above, Defendant, through its employees, has retaliated against and harassed Plaintiff for protected activity in bringing inequitable pay to the attention of Dr. Novak, her former dean, and then bringing a complaint against him alleging discrimination against herself and Dr. Song, as Chinese females. The retaliation continued as she defended a male Indian colleague, Dr. Misra, and continues up to the present. She has been harassed, her research has been undermined,

her graduate students have been used against her, her teaching load has been made more difficult, and a class she was known for was taken away from her.

4.5     This retaliation has caused damage to Plaintiff, for which she now sues.

## V.  <u>REQUESTED RELIEF</u>

5.1     As the direct and/or proximate result of UTD's actions complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against UTD, including but not limited to actual and/or economic damages, nominal damages, if applicable, compensatory damages in an amount within the jurisdictional limits of this Court, and all equitable relief to which she may be entitled.

## VI.  <u>FEES, COSTS, AND INTEREST</u>

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent her in connection with this matter, and has agreed to pay the law firm its reasonable and necessary attorney's fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiff seeks to recover her reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k).

6.2     Plaintiff is also entitled to and seeks to recover costs of court, expert witness fees, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  <u>CONDITIONS PRECEDENT</u>

7.1     All conditions precedent to the Plaintiff's recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a

jury trial and has tendered, or will tender, the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that upon final

hearing, Plaintiff recovers judgment against Defendant and be awarded:

(a)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically), including both actual and nominal damages;

(b)     her litigation expenses and costs, including but not limited to her attorneys' fees and costs and any applicable expert fees;

(c)     costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

*/s/ Frank Hill*
Frank Hill – SBN 09632000
fhill@hillgilstrap.com
Stefanie Klein – SBN 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram St.
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 FAX

**ATTORNEYS FOR PLAINTIFF**

# Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 450-2023-09832 |

|  | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(incl. Area Code)* | Date of Birth |
|---|---|---|
| Li Zhang c/o Frank Hill | (817) 261-2222 | 04/23/1965 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1400 W Abram Street, Arlington, Texas 76013 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| University of Texas at Dallas | 4,038 | (972) 883-2111 |

| Street Address | City, State and ZIP Code |
|---|---|
| 800 W. Campbell Road, Richardson, Texas 75080 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☒ COLOR   ☒ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: March 2017    Latest: present

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

- I have been employed at the University of Texas at Dallas ("UTD") for 16 years beginning in 2009. I am a tenured professor of biology.

- In March of 2017, I made a complaint against Dean Bruce Novak ("Novak") complaining of discrimination based on race, sex, and national origin. Novak then disseminated the information within the complaint to the College of Natural Sciences and the Biology Department. Since the complaint was filed, Novak, Dr. Tae Hoom Kim (current head of the Biology Department), and Dr. Kelli Palmer (the incoming head of the department) have engaged in retaliatory and discriminatory acts described below.

- On August 30, 2023, six Ph.D. students left my program without notice or complaint leaving me with only three remaining Ph.D. students. These Ph.D. students assisted in my undergraduate teaching duties as teaching assistants or in lab-monitoring roles. Now my undergraduate class has been taken away, due to lack of Ph.D. students to mentor them, leading me to believe this was a coordinated effort to sabotage my ability to fulfill my teaching duties.

- This follows a similar pattern to what happened to one of my fellow Asian colleagues, Dr. Jay Kim, who mysteriously had all of his Ph.D. students drop his program in 2019. Dr. Kim was then subsequently denied tenure. I believe this was in retaliation for my 2017 complaint, as Dr. Kim was a coinvestigator in my research grant.

- I also experienced backlash from the department heads for my defense of Dr. Misra (who is from India) in his 2022 probationary hearing.

- Overall, the support for my research has substantially diminished. I have lost multiple Ph.D. student assistants. I have lost a close collaborator in my research. I have lost influence on the future hiring of faculty members in my department and research field. I have lost most of my functional lab space.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

9/14/2023
Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*
9-14-23

CONNIE BRANNAN
Notary Public
STATE OF TEXAS
Notary ID # 441989-01
My Comm. Exp. March 20 2024

EEOC Form 5 (11/09)

| **C**HARGE OF **D**ISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☐ EEOC | |

and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

RECEIVED

SEP 18

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _____    _____ <br> Date                Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



RECEIVED

SEP 1

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
DALLAS DISTRICT

# Exhibit B

U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

April 17, 2024

Ms. Li Zhang
c/o Frank Hill, Esquire
Law Offices of Hill & Gilstrap
1400 West Abram Street
Arlington, TX  76013

Re:  EEOC Charge Against University of Texas at Dallas, et al.
     No. 450202309832

Dear Ms. Zhang:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Dallas District Office, Dallas, TX.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                              Kristen Clarke
                         Assistant Attorney General
                           Civil Rights Division

                    by      /s/ Karen L. Ferguson
                           Karen L. Ferguson
                      Supervisory Civil Rights Analyst
                      Employment Litigation Section

cc: Dallas District Office, EEOC
  University of Texas at Dallas, et al.